## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANTHONY HAMMOND MURPHY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:22-cv-66-SPB-RAL** |
| | ) | |
| **VOSGES, LTD,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM ORDER</u>

Plaintiff Anthony Hammond Murphy commenced this civil action against Defendant VOSGES, LTD on February 17, 2022 pursuant to Title III of the ADA, 42 U.S.C. §12181, et seq.. ECF No. 1. The matter was referred to United States Magistrate Judge Richard A. Lanzillo for pretrial proceedings in accordance with the Magistrate Judge's Act, 28 U.S.C. §636(b)(1) and Local Civil Rule 72.

The docket reflects that Plaintiff filed his proof of service on March 4, 2022, making Defendant's answer due on March 25, 2022. ECF No. 3. To date, no answer has been filed by Defendant. The Clerk recorded Defendant's default on April 27, 2022. ECF No. 5. Plaintiff subsequently filed a motion for default judgment against VOSGES, LTD, which remains pending before the Court. ECF No. 8.

On October 24, 2022, the Magistrate Judge entered a Report and Recommendation ("R&R") recommending that the motion for default judgment be granted and that a proposed final order be entered. Objections to the R&R were due to be filed by November 7, 2022. To date, no objections have been filed.

1

After *de novo* review of the complaint and documents in the case, the motion for default judgment and all related filings, together with the Report and Recommendation, the following Order is entered:

NOW, this 29th day of November, 2022, upon consideration of Plaintiff's Motion for Entry of Default Judgment and Defendant's failure to answer or respond to Plaintiff's Complaint within the time prescribed by the Federal Rules of Civil Procedure, the Court finds:

1. The Court has subject matter jurisdiction over this action and appears to have personal jurisdiction over the Defendant, VOSGES, LTD.

2. Plaintiff is a member of a protected class under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq.

3. Defendant sells "haute" chocolates to the public through its website, https://www/vosagechocolate.com/ (hereinafter, "Website").

4. Based upon the allegations of the Complaint:

    A. Defendant is a public accommodation pursuant to 42 U.S.C. §12181(7) and its Website is property which Defendant must make accessible to individuals with disabilities under the ADA;

    B. Plaintiff has patronized Defendant's Website but is unable to access Defendant's online goods and services because the Website is incompatible with the screen reader technology that individuals with visual disabilities use to access content on the Internet;

    C. Defendant has violated Title III of the ADA and its implementing regulations by failing to make its Website accessible to screen reader software; and

D.      Without relief, Defendant will continue to discriminate against Plaintiff and other individuals who require that Defendant create or modify its corporate policies to ensure its Website becomes, and remains, accessible to screen reader software.

IT IS THERFORE DECLARED THAT:

5.      At the commencement of this action, Defendant was in violation of Title III of the ADA and its implementing regulations in that Defendant took no action that was reasonably calculated to ensure that its Website is fully accessible to, and independently usable by, blind individuals.

IT IS ALSO ORDERED THAT:

6.      Pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(a), Defendant, and all persons and entities in privity, combination, participation or acting in concert with Defendant, including but not limited to its agents, servants, employees, franchisees, distributors, licensees, successors and assigns, attorneys, officers and directors, whether on behalf of any other business entity heretofore or hereafter created, shall by the deadlines provided below take the following steps to bring its Website, https://www.vosgeschocolate.com/, into full compliance with the requirements set forth in the ADA and its implementing regulations, so that it is fully accessible to, and independently usable by, blind individuals:

A.      Within 90 days of the Court's Order, Defendant shall complete an accessibility audit of its Digital Platform that will examine the accessibility and usability of the Digital Platform by consumers who are blind.

3

B.     Within 180 days of the Court's Order, Defendant shall develop a corrective action strategy ("Strategy") based on the audit findings. In addition to the deadlines outlined below, the Strategy shall include dates by which corrective action shall be completed.

C.     Within 210 days of the Court's Order, Defendant shall disseminate the Strategy among its executive-level managers, employees, and contractors, if any, involved in digital development and post it on the Digital Platform.

D.     Within 90 days of the Court's Order, Defendant shall develop a Digital Accessibility Policy Statement that demonstrates its commitment to digital accessibility to blind and other print disabled consumers, as required by the Americans with Disabilities Act. This Policy Statement shall be posted in the header of each homepage on the Digital Platform within 120 days of the Court's Order and shall disclose that an audit is taking or has taken place and that a Strategy will be disseminated and posted on the Digital Platform within 180 days of the Court's Order.

E.     Within 240 days of the Court's Order, Defendant shall develop procedures to implement its Digital Accessibility Policy across the entire Digital Platform. Defendant shall disseminate its Policy and procedures to its executive-level managers, employees, and contractors, if any, involved in digital development.

F.   Within 12 months of the Court's Order, Defendant shall conduct training, instruction and support to ensure that all executive-level managers and employees involved in digital development are aware of and understand the Digital Accessibility Policy, including proper procedures, tools, and techniques to implement the Digital Accessibility Policy effectively and consistently.

G.   Within 12 months of the Court's Order, Defendant shall hire or designate a staff person with responsibility and commensurate authority to monitor the Digital Accessibility Policy and procedures.

H.   Within 12 months of the Court's Order, Defendant shall develop and institute procedures that require third-party content and plug-ins built into the Digital Platform to provide blind consumers the same programs, benefits and services that they do to individuals without disabilities, except for when it is technically unfeasible to do so. Defendant shall effectuate these obligations by, among other things, implementing as part of its Request for Proposal process language that bidders meet the accessibility standards set forth in WCAG 2.0 Level AA for web-based technology and the Americans with Disabilities Act; requiring or encouraging, at Defendant's discretion, as part of any contract with its vendors, provisions in which the vendor warrants that any technology provided complies with these standards and any applicable current federal disability law.

I.      Within 18 months, all pages hosted on the Digital Platform that have been published shall be Accessible to blind users. "Accessible" means fully and equally accessible to and independently usable by blind individuals so that blind consumers are able to acquire the same information, engage in the same interactions, and enjoy the same services as sighted consumers, with substantially equivalent ease of use.

J.      Defendant shall not release for public viewing or use a substantial addition, update, or change to the Digital Platform until it has determined through automated and user testing that those proposed additions, updates, or changes are Accessible.

K.      Defendant shall conduct (a) an automated scan monthly and (b) end-user testing quarterly thereafter to ascertain whether any new posted content is accessible. Defendant shall notify all employees and contractors, if any, involved in digital development if corrections to the Digital Platform are needed and of reasonable timelines for corrections to be made. Defendant shall note if corrective action has been taken during the next monthly scan and quarterly end-user test.

L.      Following the date of the Court's Order, for each new, renewed, or renegotiated contract with a vendor of Third-Party Content, Defendant shall seek a commitment from the vendor to provide content in a format that is Accessible.

M.   Defendant shall pay Plaintiff $30,477.00, an amount equal to the reasonable attorneys' fees and costs that Plaintiff has incurred to date, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505, within 45 days of this Order. The payment shall be made to "Lawrence H. Fisher and sent via next-day delivery to Lawrence H. Fisher, One Oxford Centre, 301 Grant Street, Suite 270, Pittsburgh, PA 15219.

N.   Until ordered otherwise, Plaintiff, as the prevailing party, may file subsequent fee petitions to reimburse him for any costs he incurs in the future to monitor Defendant's compliance with the Court's Order. *See People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 235 (3d Cir. 2008) ("This Court, like other Courts of Appeals, allows fees to be awarded for monitoring and enforcing Court orders and judgments.").

Consistent with the foregoing, IT IS ORDERED that Plaintiff's Motion for Default Judgment against Defendant VOSGES, LTD, ECF No. [8], shall be, and hereby is, GRANTED. A separate Order of Default Judgment incorporating the terms of this Memorandum Order will be entered by the Court in accordance with Rule 58 of the Federal Rules of Civil Procedure.

Finally, IT IS ORDERED that the Report and Recommendation issued by Magistrate Judge Lanzillo on October 24, 2022, ECF No. [10], is adopted as the opinion of this Court.

SUSAN PARADISE BAXTER
United States District Judge